# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02064-NYW

BRENDA VAN METRE,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

       This action comes before the court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 for review of the Commissioner of Social Security's ("Commissioner" or "Secretary") final decision denying Plaintiff Brenda Van Metre's, application for Disability Insurance Benefits ("DIB"). Pursuant to the Order of Reference dated March 2, 2016 [#22], this civil action was referred to the Magistrate Judge "for all purposes" pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(e). The court has carefully considered the Complaint filed September 18, 2015 [#1], Plaintiff's Opening Brief filed January 8, 2016 [#19], Defendant's Response Brief filed January 27, 2016 [#20], Plaintiff's Reply Brief filed February 12, 2016 [#21], the entire case file, the administrative record, and applicable case law.[1] For the following reasons, I respectfully REVERSE and REMAND the Commissioner's decision.

---

[1] Pursuant to D.C.COLO.LAPR 10.2(a)(2), as an answer to the complaint, the Commissioner shall file a certified copy of the transcript of the administrative record and any affirmative defense, which shall be waived if not filed at that time.

## PROCEDURAL HISTORY

On October 2, 2012, Plaintiff Brenda Van Metre ("Plaintiff" or "Ms. Van Metre") filed an application for DIB under Title II of the Act. *See* [#13-5 at 120-121].[2] Plaintiff alleges she became disabled on November 9, 2011, at the age of 50, following a motor vehicle collision with a tractor trailer. *See, e.g.,* [#13-2 at 37; #13-5 at 120]. Her claim was initially denied on February 6, 2013, and she filed a written request for a hearing on March 15, 2013. [#13-3 at 52-64, #13-4 at 74]. On January 10, 2014, Plaintiff and her counsel appeared for a hearing before Administrative Law Judge Marsha Stroup ("ALJ").

At the hearing, Plaintiff testified that she has a ninth-grade education and had worked for approximately five years at Dependable Auto Shippers as a vehicle inspector. In that position, she "inspected vehicles when they came over on the transport trucks…for any damages that might have happened in between the transport." [#13-2 at 35]. The company let her go in 2009. [*Id.*] Plaintiff then worked seasonally for approximately eight months driving an ice cream truck, and worked for Global Experience Specialties helping to set up for shows at the Denver Convention Center. [*Id.* at 36].

Plaintiff testified that in November 2011 she was in an automobile accident with a tractor trailer, which ultimately caused her significant back pain. [#13-2 at 37]. One year later, she underwent back surgery for a spinal fusion. She testified that before the surgery she could walk

---

[2] The court uses this designation to refer to the Electronic Court Filing system ("ECF") document number attached to the Administrative Record and the page number of the Administrative Record as it was filed by the Parties. Plaintiff's citations and Defendant's citations similarly refer to the page number of the Administrative Record, or, where applicable, the page number of a brief. *See, e.g.,* [#19 at 4; #20 at 1].

no further than half a block without pain, and that she felt better after the surgery and could walk "two to three blocks." [*Id.* at 38]. Plaintiff participated in physical therapy after the operation.

Ms. Van Metre also suffers from arthritis in her right arm and tendonitis in her left arm, for which she takes the pain medicine naproxen. [#13-2 at 39]. She testified that she experiences "shooting pains…up to [her] elbows" when she attempts to lift anything. [*Id.*] Plaintiff stated that the arm pain began in December 2013 and her doctor referred her to a specialist. [*Id.* at 40]. As for her back, Ms. Van Metre testified that she experiences aching pain in her lower back and, if she stands for longer than an hour, once she sits down she "feels like [she is] sitting on [her] spine." [#13-2 at 41]. Nonetheless, Ms. Van Metre dresses herself, is able to take a shower, cooks, cleans dishes, vacuums, washes clothes, and grocery shops. [*Id.* at 41-42]. Due to the pain, she is no longer able to work on her truck, which requires lifting and carrying heavy chains. However, she swims and rides bikes with her ten-year old granddaughter, and watches television with her brother, whose land she currently lives on. [*Id.* at 42]. Plaintiff testified that she has trouble sleeping and that "burning pains" in her knuckles, arms, and hand wake her. [#13-2 at 43].

Ms. Van Metre participates in physical therapy approximately three times a week. The pain in her right hand, her dominant hand, is worse than in her left hand, and prevents her from grasping or holding onto objects. [#13-2 at 44]. For example, she will drop a cup of coffee; her "hand will just let it go…[her] hands get numb and then [she] get[s] pains into [her] arm." [*Id.*] She cannot write for very long and her hand numbs if she turns her arms upside down. Plaintiff experiences numbness "two, three times a day, if not more," which lasts for five minutes, and the pain in her hands "comes and goes." [*Id.* at 45]. She experiences pain in her right hand every day, which interrupts for about fifteen minutes whatever task she is pursuing. [*Id.* at 46]. Ms.

Van Metre testified that she is able to lift up to five pounds, and can sit for approximately forty-five minutes before her legs begin to ache and her back hurts. [*Id.*]

Ashley Bryers testified as a vocational expert ("VE"). The ALJ first questioned available jobs that involve light, unskilled, simple, repetitive types of work for an individual who can engage in frequent handwork, handling, fingering, and who cannot climb or balance. [#13-2 at 47-48]. The VE testified that such a person could work as a merchandise marker, for which there are 12,000 jobs in Colorado, as a cashier, for which there are 20,000 jobs in Colorado, or as a collator operator, for which there are 650 jobs in Colorado. [*Id.* at 48]. These jobs would accommodate the employee missing one or two days a month. That same individual could not perform these jobs if she were limited to only occasional use of her dominant hand. The VE testified that sandwich board carrier, school bus monitor, and children's attendant positions require only occasional handwork. Finally, the VE testified that none of Plaintiff's skills from her previous jobs would transfer to a sedentary position. [*Id.* at 50].

The ALJ denied Ms. Van Metre's application in a written decision issued February 27, 2014, concluding that Ms. Van Metre was not disabled. [#13-2 at 12-23]. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on July 21, 2015. [#13-2 at 2]. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nielson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on September 18, 2015. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

**I.     The ALJ's Decision**

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844

F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) assessing "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .

7

> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. The Commissioner may rely upon the testimony of a vocational expert to satisfy her burden at step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

The ALJ first determined that Ms. Van Metre was insured for disability through December 31, 2014. Next, following the five-step evaluation process, the ALJ determined that Ms. Van Metre: (1) had not engaged in substantial gainful activity since the alleged onset date of November 9, 2011; (2) had severe impairments of "L3-4 spinal stenosis and degenerative spondylolisthesis, status post L3-4 decompression, and right hand trigger finger"; and (3) did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At step four, the ALJ found that Plaintiff had residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except Ms. Van Metre should not climb or balance: "[s]he can stoop, kneel, and crawl on a very occasional basis," and is "limited to frequent handwork and frequent handling and fingering," and "unskilled, simple and repetitive work." [#13-2 at 15-16].

Ms. Van Metre asserts two arguments in objection to the ALJ's decision. First, Plaintiff contends that the ALJ did not consider all of her medically determinable impairments, particularly her obesity, and that the ALJ's failure to address the effect of her obesity undermines the RFC finding. [#19]. Second, Ms. Van Metre argues that the ALJ's RFC determination is not supported by substantial evidence. [*Id.*].

## II.   ALJ's Consideration of Plaintiff's Medically Determinable Impairments

Ms. Van Metre argues that the record establishes she suffers from obesity and has been diagnosed as obese, and that the ALJ was required to consider her obesity at step two of the inquiry. [#19 at 9]. Defendant responds that Ms. Van Metre did not regularly complain of limitations caused by obesity and no physician opined that the condition resulted in additional functional limitations. [#20 at 5].

Ms. Van Metre has a body mass index ("BMI")[3] ranging from 30.80 to 31.79, *see* [#13-7 at 198, 201; #13-8 at 383, 385)], which the Clinical Guidelines describe as Level I obesity, the lowest level. Social Security Ruling ("SSR") 00-3p, 2000 WL 574779, 65 Fed. Reg. 31039, 31039 (referencing NIH Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults). SSR 02–01p requires an ALJ to consider the effects of obesity at several points in the five-step process and explain how she reached her conclusions on whether obesity caused any limitations. *See* SSR 02–01p, 2002 WL 34686281, at *1 ("[newly added provisions] instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process"). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." SSR 02–1p, 2002 WL 34686281, at

---

[3] BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$).

*6. Obesity can affect "exertional, postural, and social functions," and a failure by the ALJ to assess the effect of obesity on the claimant's RFC can result in reversal. *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003).

In support of her argument that the ALJ failed to consider all of her impairments because she failed to take into account her obesity, Ms. Van Metre cites several pages of her medical file where her weight and height are recorded alongside her blood pressure, temperature, pulse rate, and BMI. *See* [#19 at 9 (citing #13-7 at 198, 201; #13-8 at 383, 385)]. During a May 2012 visit regarding pain in Plaintiff's right-hand, Nancy Welter, FNP listed "obesity" along with hand pain under "Assessments"; during a follow-up June 2012 visit for Plaintiff's hand, Jason Heine, M.D. listed "weight management" as preventative medicine. [#13-8 at 383, 385]. Typically, an ALJ's error in failing to consider obesity occurs at steps 3 or 4, *after* the ALJ has identified obesity as an impairment.[4] Here, Plaintiff argues the ALJ erred at step two in failing to list obesity as a medically determinable impairment, and then failing to consider its impact on the other identified impairments.

When establishing the existence of obesity, the ALJ generally relies "on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well

---

[4] *See Hogarth v. Astrue*, No. 07–cv–02106–CMA, 2009 WL 973557, at *2 (D. Colo. Apr. 9, 2009) (reviewing argument that ALJ erred at step 3 in considering severity of plaintiff's obesity, noting family physician observed that at 500 pounds, plaintiff had a "permanent disability until she is able to obtain a gastric bypass"); *Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008) (finding ALJ erred in, once determining plaintiff's obesity constituted a severe impairment, failing to consider the effect of her obesity in combination with her other severe impairments); *Parks v. Colvin*, No 13–cv–01307–RBJ, 2015 WL 1064177, at *3 (D. Colo. Mar. 9, 2015) (reversing ALJ for his failure *inter alia* to consider claimant's obesity at step three after finding it at step two to be a severe impairment); *Cody v. Astrue*, No. 09-3060, 2010 WL 3951987, at *8 (C.D. Ill. Oct. 6, 2010) (finding ALJ erred because he did not consider impact of claimant's obesity where treating physician "indicated more than once that [claimant's] weight affected the severity of his arthritis symptoms…stated in her operative notes that he had a BMI of 43…[claimant] further testified about his weight at the hearing…[t]he record clearly made [claimant's] obesity an issue, and the ALJ should have addressed it.").

as weight and height," and absent evidence to the contrary in the case record, he or she "will accept a diagnosis of obesity given by a treating source or by a consultative examiner." SSR 02-1P, 2002 WL 34686281, at *3. Where the case record does not include a diagnosis of obesity, the ALJ "in most cases" will use his or her judgment "to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity." *Id.* "[O]besity must be considered at all steps of the sequential evaluation." *Rodman v. Astrue*, No. 09–cv–00770–WYD, 2011 WL 1119875, at *4 (D. Colo. Mar. 28, 2011) (citing *Baker*, 84 F. App'x at 14) (recognizing "the ALJ must assess the effects of claimant's obesity in conjunction with her back problem and explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations.") (internal quotation marks omitted, citation omitted, brackets in original). *See also Love v. Colvin*, No. 14–1078–JWL, 2015 WL 1530599, at *2 (D. Kan. Apr. 6, 2015) ("SSR 021p requires that obesity be considered in determining whether an individual has a medically determinable impairment, whether the individual's impairments are severe, whether the individual's impairments meet or equal the requirements of a listed impairment, and whether the individual's impairments prevent her from doing past relevant work or any other work in the economy.").

      The court notes that Ms. Van Metre did not list obesity on her initial DIB application, *see* [#13-5 at 120-121], and did not raise obesity as an issue during the hearing before the ALJ, at which she was represented. However, the law nonetheless requires the ALJ to give consideration to obesity when it is documented in the record. *See, e.g., Love*, 2015 WL 1530599, at *2 (finding that while the applicable SSR and regulations do not necessarily require the ALJ to engage in an extensive discussion regarding the claimant's obesity, the law requires that she give

it consideration). *See also Celaya v. Halter*, 332 F.3d 1177, 1181–83 (9th Cir. 2003) (holding the ALJ should have included the presence of obesity into the analysis, despite claimant's failure to raise it, because "it was raised implicitly in [claimant's] report of symptoms," "it was clear from the record that [claimant's] obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses," and because claimant was *pro se*, but suggesting that the ALJ should have included obesity even had the claimant been represented). *But see Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (instructing that an ALJ is generally entitled to "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," in finding that the ALJ exercised good judgment in "refusing to delve more deeply into the mental impairments Claimant now emphasizes on appeal") (citation omitted).

In this case, the ALJ made no mention of Ms. Van Metre's obesity at any step of the sequential evaluation. After identifying spinal stenosis, degenerative spondylolisthesis, decompression, and right hand trigger finger as impairments at step two, the ALJ stated that she "finds no basis for additional limitations apart from those reflected in the claimant's [RFC] described below." [#13-2 at 15]. The ALJ also "reiterate[d]," after summarizing the medical record regarding Plaintiff's lumbar issues and hand pain, "that she has considered all the evidence of record…whether explicitly discussed in this decision or not." [*Id.* at 19]. The court upon review can only speculate as to whether the ALJ considered but then rejected the notion that Plaintiff had been diagnosed as having obesity, or if the ALJ simply was not aware of the two entries in a 436-page medical record that referenced Ms. Van Metre as obese. Accordingly, I respectfully find that the ALJ erred in not including obesity as a medically determinable impairment, or in failing to explain her rationale for the omission.

However, the court notes that Ms. Van Metre does not argue *how* her obesity exacerbates her recognized impairments and how it otherwise limits her ability to work. Nor does Plaintiff cite to any part of the record that indicates impairment as a result of her weight, or that she received treatment for obesity or impairments caused by obesity. She argues only that "it cannot be said that the ALJ considered [her] ability to perform sustained work activities based on the combined effect of all of her impairments." [#19 at 10].[5] Ordinarily, the court would refrain from participating in the type of speculation that Plaintiff invites regarding how or whether her obesity impacts her life. *See Fagan v. Astrue*, 231 F. App'x 835, 838 (10th Cir. 2007) (quoting SSR 02–01p) ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."). However, in *Fagan*, and cases from this Circuit relying on *Fagan* in declining to remand for failure to explicitly examine obesity, the ALJ included mention of the claimant's obesity in his or her discussion of the medical evidence. *Id.* at 837 n.3. *See, e.g., Gennaro v. Colvin*, No. 13–cv–03247–MEH, 2015 WL 490830, at *12 (D. Colo. Feb. 2, 2015); *Breath v. Colvin*, No. CIV–14–444–HE, 2015 WL 5569020, at *3 (W.D. Okla. Aug. 26, 2015) (noting "ALJ not only referenced Plaintiff's obesity,

---

[5] With respect to Plaintiff's argument that the ALJ failed to consider whether her obesity impacted her quality of sleep, the record demonstrates no connection between the two. The medical evidence reflects two instances when Ms. Van Metre lodged complaints about interrupted sleep: during a June 2012 visit with Dr. William Miller of Synergy Health Partners, the doctor listed "[i]nterrupted sleep" along with cervicothoracic strain, lumbar strain, and lumbar central canal stenosis as ailments "deemed a direct result of the motor vehicle collision versus semi from 11/09/11," [#13-7 at 273]; and during an October 2012 visit with Dr. Miller, he again associated Plaintiff's poor sleep with her lumbar issues. *See* [*id.* at 262-263]. Ms. Van Metre did not testify that her weight caused her fatigue or disrupted sleep; rather, she associated disrupted sleep with pain in her arms. [#13-2 at 43]. Nor does she make any such assertion in her papers; she simply states that "she has suffered from impaired sleep since the motor vehicle accident." [#19 at 10; *see also* #13-6 at 142].

13

height, and weight, but also assigned 'great weight' to the opinions of Plaintiff's treating and examining opinions-several of whom expressly noted Plaintiff's obesity and/or height and weight in reaching those opinions"). *See also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)) (finding no reversible error where ALJ failed to address claimant's obesity because he adopted 'the limitations suggested by the specialists and reviewing doctors' who were aware of the condition [of obesity]," and the claimant failed to "specify how his obesity further impaired his ability to work"). Such is the not the case here. The ALJ did not mention Ms. Van Metre's obesity, height and weight, or BMI in her discussion of the medical evidence, and she also attributed limited weight to Dr. Heine's opinion that Ms. Van Metre was "currently" unable to use her right arm. *See* [#13-2 at 20]. I find that the ALJ's error requires reversal.

### III.     The ALJ's Assessment of Plaintiff's RFC

In addition, Ms. Van Metre argues the ALJ erred in attributing little weight to the opinion of her lumbar fusion surgeon, Robert J. Bess, M.D., and that the ALJ should have contacted Dr. Bess for a current assessment prior to issuing her decision. [#19 at 11]. Ms. Van Metre also argues that the ALJ erred in her consideration of Plaintiff's daily activities in finding that Plaintiff can perform substantial, gainful work. [*Id.* at 12]. On these bases, Ms. Van Metre contends the RFC is not supported by substantial evidence. The Commissioner responds that the ALJ properly allocated little weight to Dr. Bess's opinion because the limitations assigned by him were temporary and related to the post-operative period, and the medical record demonstrates that Plaintiff experienced significant improvement following the operation. [#20 at 6]. Defendant does not respond regarding the ALJ's treatment of Plaintiff's daily activities.

On November 13, 2012, Ms. Van Metre underwent an L3-4 left-sided decompressive laminectomy, lateral recess decompressions, and foraminotomies, a bone marrow aspiration, right anterior superior iliac crest, posterior spinal fusion, L3-4 with one marrow concentrate, and posterior spinal instrumentation. *See* [#13-2 at 18; #13-8 at 343-347]. Following the operation, Dr. Bess completed a physical medical source statement ("Medical Statement") opining that Ms. Van Metre could walk one block, sit for fifteen minutes at a time, stand for fifteen minutes at a time, and could sit, stand, or walk less than two hours total in an eight-hour workday. [#13-8 at 375-379]. Dr. Bess specified in the Medical Statement that the restrictions were "post-op," and expected to last "for at least 6 weeks post-op." [*Id.* at 377]. Dr. Bess also answered many questions as "[not applicable] post-op." [*Id.* at 376-378].

The following month, Dr. Bess saw Plaintiff and observed that her "[p]reoperative symptoms are gone," and that she was ambulating independently with no neurologic deficits, and exhibiting normal motor and sensory function. [#13-8 at 352]. Ms. Van Metre began post-operative physical therapy in December 2012, at which time she described her bilateral lumbar pain as a level 5 on a scale of 0 to 10. [*Id.* at 424]. In January 2013, Dr. Bess recorded that Plaintiff "is doing very well postoperatively," and that she had experienced some increased back pain during the previous twenty-four hours after walking four blocks, but was feeling better. [*Id.* at 391]. By February 2013, after thirteen physical therapy sessions, Ms. Van Metre reported improvement with a reduction in pain intensity and frequency. [*Id.* at 399]. She also reported an increase in her range of motion and tolerance to daily-living activities, and that she experienced occasional sharp pains when "over active," but otherwise would describe her pain as a 2 on a scale of 0 to 10. [*Id.*] Plaintiff was discharged from formal physical therapy, with the notation that she had progressed well, and instructed to continue with her home exercise program. [*Id.*]

15

Also in March 2013, Dr. Bess reported that Ms. Van Metre's "[p]reoperative symptoms are gone," and her "[o]perative pain resolved," with the exception of some bilateral proximal gluteal pain when she engages in more strenuous activity. [*Id.* at 390]. Dr. Bess later referred Plaintiff for massage therapy in response to her reports of occasional muscular pain. [*Id.* at 389]. In August 2013, Ms. Van Metre reported to Dr. Bess that she no longer experienced preoperative or operative pain, and had no complaints of back pain, leg pain, weakness, or paresthesias. She also reported that she was back to full activity and work around the house. [*Id.* at 387].

This court acknowledges that Plaintiff's RFC may change upon remand to the ALJ to consider obesity and its effects upon Plaintiff. Nevertheless, with respect to the specific challenge to the ALJ's treatment of the Medical Statement, I respectfully disagree that the RFC is flawed. In completing the Medical Statement, Dr. Bess identified limitations he expected Plaintiff to face immediately following back surgery. The record indicates that Plaintiff reached a full recovery by August 2013, thus rendering those limitations outdated. I do not find the ALJ's conclusion that Dr. Bess's restrictions "have little bearing on the claimant's level of functioning outside of this post-operative recovery period," [#13-2 at 20], speculative or otherwise erroneous, as Plaintiff contends. Furthermore, I respectfully disagree that the ALJ should have contacted Dr. Bess for a current assessment of Plaintiff's limitations. Pursuant to 20 C.F.R. § 404.1512(e)(1), the ALJ:

> will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques

I do not find conflict or ambiguity between the Medical Statement and Plaintiff's medical record, nor do I find the Medical Statement, which was clearly completed in the context of post-

16

operation, incomplete. Dr. Bess was Plaintiff's back surgeon, and, as of August 2013, he reported her free of all preoperative and operative pain and with no weakness.

I similarly do not agree that the ALJ's consideration of Ms. Van Metre's daily activities is unsupported by the record. Ms. Van Metre testified that she performs a wide range of household tasks, including cooking, dishwashing, vacuuming, laundry, and grocery shopping (with the help of a family member). [#13-2 at 41-42; *see also* #13-6 at 141-145]. She also spends time with her 10-year old granddaughter, which includes swimming and bike riding. [#13-2 at 42]. And, Ms. Van Metre was engaged in these activities prior to her back surgery. *See* [#13-6 at 142-148]. The court will not second-guess the ALJ's credibility judgment where it appears consistent with the testimonial and medical evidence. *See, e.g., Lax*, 489 F.3d at 1084 ("we will not reweigh the evidence or substitute our judgment for the Commissioner's") (citation omitted). Accordingly, I affirm the ALJ with respect to the conclusions she drew from Dr. Bess's Medical Statement and Plaintiff's daily activities.

## CONCLUSION

For the reasons set forth herein, the court hereby REVERSES AND REMANDS, for consideration of Plaintiff's obesity at step two, including whether her obesity constitutes an impairment, if so, whether the impairment is severe, and, at the subsequent sequential steps, the extent to which her obesity impacts, if at all, the other medically determinable impairments.

DATED: September 22, 2016            BY THE COURT:

                                     s/ Nina Y. Wang_____
                                     Nina Y. Wang
                                     United States Magistrate Judge